UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT HIBBERT, | Civ. No. 21-13119 (MAH) |
| Plaintiff, | |
| v. | |
| FLAVORS C INC.; RICARDO RALAT, | **OPINION & ORDER** |
| Defendants. | |

This matter comes before the Court by way of Defendants' motion to bar Plaintiff from calling experts at trial or otherwise offering expert medical testimony to support his claim that the accident underlying this litigation caused Plaintiff to suffer a concussion or recurrence of symptoms from a stroke that Plaintiff suffered in 2013.  D.E. 82.  Plaintiff opposes the motion. D.E. 85.  The Court has considered the moving, opposition, and reply papers.  The Court has considered the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Defendants' motion is granted in part and denied in part.[1]

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The Plaintiff, Robert Hibbert, alleges that on November 10, 2020, he was operating a tractor-trailer on Dowd Avenue in Elizabeth, New Jersey.  Complaint, D.E. 1-1, at ¶¶10, 21.  He further alleges that he was rear-ended by a tractor operated by Defendant Ricardo Ralat, who was

---

[1] Defendant concedes that at trial, Plaintiff may testify that the accident caused him neck and back pain.  Def. Reply Brf., D.E. 88, at 7.  It is well established that a party may testify about subjective pain he or she experiences following an accident.  Therefore, although the Court grants Defendants' motion to exclude Plaintiff from offering at trial any medical expert testimony that the November 10, 2020 accident caused Plaintiff to suffer a concussion or recurrence at symptoms from a stroke that Plaintiff suffered in 2013, the Court will permit Plaintiff to testify about pain that he experienced following the accident.

1

working for Defendant Flavor C, Inc. *Id.* at ¶¶22-24. Plaintiff alleges that after the accident, he exhibited symptoms that were similar to those he experienced when he had a stroke in 2013.

The Court held the initial scheduling conference on November 23, 2021, and entered a Pretrial Scheduling Order. D.E. 7. The deadlines to complete fact and expert discovery were extended on multiple occasions. D.E. 11, 15, 21, 26, 41, 69, 73, 74. In fact, as recently as March 12, 2025, the Court allowed Plaintiff until June 23, 2025 to provide any Rule 26(a)(2)(C) disclosures.[2] D.E. 74. Therefore, Plaintiff was afforded ample opportunity to serve any medical expert report, or disclosures for testifying treating physicians pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

By Opinion and Order filed on July 18, 2024, Judge Chesler granted the Defendants' motion to preclude expert testimony at trial that the accident caused Plaintiff to suffer a concussion and stroke symptoms. D.E. 49. At issue in that motion was the potential testimony of Dr. John E. Robinton.[3] Plaintiff sought to have Dr. Robinton testify that that accident caused

---

[2] Federal Rule of Civil Procedure 26(a)(2)(C) is similar to Rule 26(a)(2)(B) in its purpose of requiring a party "to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, Advisory Committee Note to 1993 Amendments. Rule 26(a)(2)(C) addresses treating physicians, and its disclosure requirements are more modest than those required by Rule 26(a)(2)(B), which addresses the disclosure requirements for an expert retained specifically to provide expert testimony in a case. Rule 26(a)(2)(C) requires the treating physician to disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

[3] As Judge Chesler noted, there are three reports in this case: (1) the report of Dr. Robinton, which is discussed herein; (2) the report of Dr. James A. Charles, who was an independent medical examiner retained by Plaintiff's workers compensation carrier; and (3) the report of Defendants' expert witness, Dr. William B. Head Jr. Op. & Order, D.E. 49, at 2. Dr. Charles denied that Plaintiff suffered a concussion due to the accident, and opined that Plaintiff instead suffered from cerebrovascular disease. *Id.* (quoting and citing Dr. Charles's Report, D.E. 45-3 at 2). And although Dr. Head did not specifically mention a concussion, he concluded that "'I can

Plaintiff "'hit his head and los[e] consciousness,'" thereby causing a concussion which, in turn, "'triggered a stroke.'" Op. & Order at 2. Dr. Robinton opined in pertinent part that "'[g]iven that the recent MRI revealed no evidence of an acute injury, I am hopeful that the present complaints and findings are related to a concussion.'" *Id.* (quoting Dr. Robinton Report, D.E. 45-5 at 2). Dr. Robinton also stated that based on his review of Plaintiff's neuropsychological assessment, "'it does not appear that the report is absolute in [its] conclusion regarding etiology.'" *Id.* (quoting Dr. Robinton Report, D.E. 45-5 at 6).

The Court rejected Plaintiff's argument that because the medical evidence did not exclude the possibility that the accident caused Plaintiff to suffer a concussion, Dr. Robinton could testify about the possibility that the accident caused a concussion. The Court reasoned that Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), prohibit such unsupported speculation. *Id.* at 4. The Court noted that the record was bereft of any evidence that Plaintiff sustained head trauma or some other injury in the accident. *Id.* at 4-5. Indeed, Plaintiff admitted that he did not recall how the accident occurred. Additionally, Dr. Robinton's "hope" that the Plaintiff's complaints related to a concussion was not, by itself, reliable, given that Plaintiff had no recollection of sustaining a concussion or any other injury in the accident, and that Dr. Robinton himself opined that Plaintiff's primary issues were related to his stroke. *Id.* at 5. The Court noted that "Dr. Robinton's report is entirely devoid of any affirmative evidence that would qualify his opinion regarding the cause of the accident as an admissible expert opinion under *Daubert* and Rule 702." *Id.* at 5.

---

find no psychiatric condition from his November 10, 2020 accident, and no neurological condition from that accident . . . .'" *Id.* (quoting Dr. Head's Report, D.E. 45-4 at 12).

3

Following Judge Chesler's ruling, the Court allowed Plaintiff ample opportunity to identify and offer any medical professionals to opine that the accident caused Plaintiff to suffer a concussion or recurrence of stroke symptoms. *See, e.g.*, Am. Sched. Order, Sept. 16, 2024, D.E. 69 (allowing Plaintiff to amend interrogatory answers to identify the treating physicians he intends to call at trial, and requiring disclosure of Rule 26(a)(2)(C) information, by October 14, 2024); Am. Sched. Order, Dec. 19, 2024, D.E. 73 (setting deadlines for Plaintiff to subpoena his treating physicians, including Dr. Mehta, for treatment records specific to injuries allegedly caused by this accident, and to move to enforce the subpoenas); Am. Sched. Order, Mar. 12, 2025, D.E. 74 (extending deadline for Plaintiff to subpoena medical records specific to injury underlying this case from Dr. Mehta, and to move to enforce the subpoena to Dr. Mehta).

## II.    ANALYSIS

Despite substantial efforts by Plaintiff's counsel to procure competent expert medical testimony, there remains no record evidence that Plaintiff sustained head trauma, stroke symptoms, or some other neurological injury as a result of the accident on November 10, 2020. Nor does Plaintiff's opposition to the instant motion ask for more time to do so. Instead, Plaintiff has attempted to weave together an assortment of various excerpts from medical records on the issue of causation. He proposes to offer up to eight medical professionals to testify about those entries, and thereby try to cobble together admissible evidence that the accident caused Plaintiff to suffer a concussion that, in turn, resulted in stroke symptoms. It does not appear that Plaintiff has served a Rule 26(a)(2)(C) disclosure for any of these proposed witnesses. Instead, he provided a list of those physicians to Defense counsel on June 2, 2025. Certification of Elias Abilheira, Esq., D.E. 82-2, Ex. F (June 2, 2025 Letter from John Shields, Esq. to Elias Abilheira, Esq.). However, the list does not provide the subject matter about which each witness will

provide expert testimony, a summary of the witness's opinions, or the facts and findings underlying those opinions, as Rule 26(a)(2)(C) requires.  Instead, the description for each witness consists of the witness's name, the witness's employment, and that the testimony would be limited to the records "from the workers compensation file which was exchanged by your office."  *Id.*

Plaintiff's opposition provides little substantive discussion of those physicians and their expected opinion testimony or the bases for any such opinions.  Instead, Plaintiff focuses on documents from two of the doctors.  First, Plaintiff notes that the November 17, 2020 report of independent medical examination by Dr. Carl P. Giordano, who is an orthopedist, observed that Plaintiff has no history of seizures, even as he has a history of diabetes and hypertension.  Pl. Opp. Brf., D.E. 85, a 4 (citing Nov. 17, 2020 letter from Dr. Giordano); *id.* at 6.  *See also* Decl. of John Shields, Esq. ("Shields Decl."), Ex. 1, D.E. 85-1, at 167 (Dr. Giordano's Report). According to Plaintiff, Dr. Giordano conducted a physical examination of Plaintiff and determined that Plaintiff had post-concussive syndrome.  *Id.*

Second, Plaintiff contends that Dr. Nancy Gadallah, who treated Plaintiff as an emergency-room physician, "states the differential is stroke versus seizure versus TBI.  MRI was negative as was the EEG, which, according to her, stroke was less likely."  Pl. Opp. Brf. at 5.  *See also* Shields Decl., Ex. 1, D.E. 85-1, at 73-80 (Nov. 11, 2020 record of treatment).  In fact, Dr. Gadallah allowed that Plaintiff's post-accident condition could have been the result of any of three causes: (1) a stroke, (2) a seizure, or (3) a traumatic brain injury, although Dr. Gadallah opined that a stroke was less likely.  *Id.*  Although Dr. Gadallah identified those three potential causes, she did not identify the most likely actual cause, much less identify the facts underlying such an opinion.  Her identification of the three possible causes appears only in the treating

5

records, as Plaintiff never served a Rule 26(a)(2)(C) disclosure for Dr. Gadallah.  Finally, Dr. Gadallah did not opine that the accident caused Plaintiff's condition.

The deficiencies in Plaintiff's approach are manifest.  Principally, it is contrary to the purpose and letter of Rule 26(a)(2)(C).  The treatment records by Dr. Gadallah fall well short of the requirements of Rule 26(a)(2)(C).  They report test results and clinical observations concerning the Plaintiff on November 11, 2020.  *See, e.g.*, Shields Decl., Ex. 1, D.E. 85-1, at 73-80.  The records provide none of the information that Rule 26(a)(2)(C) requires, leaving the Court and Defense counsel to guess as the subject matter of her testimony, her opinions, and the bases for those opinions.  Additionally, Plaintiff provides no indication at all that Dr. Gadallah ever determined the cause of Plaintiff's condition and whether it was due to the November 10, 2020 accident.

Plaintiff fares no better with the November 17, 2020 report of Dr. Giordano.  Dr. Giordano noted that Plaintiff has no history of seizures, and observed that Plaintiff had a stroke in 2013.  *Id.* at 167-72.  However, Dr. Giordano noted, "[n]othing . . . was identified on his new CAT scan.  There does appear to be dramatic change in his speech.  And mental faculties."  *Id.* at 167.  Dr. Giordano diagnosed "post-concussion syndrome with some type of aphsia."  *Id.* at 171.  On the issue of causation, Dr. Giordano merely noted that "[t]here does appear to be a causal relationship to the injury described by the patient and the symptoms for which treatment is rendered."  *Id.* at 171.  Dr. Giordano did not offer any diagnosis or opinion on whether the November 10, 2020 accident caused Plaintiff to suffer an injury.

Dr. Giordano's report does not meet the requirements of Rule 26(a)(2)(B).  In fact, the subject matter as to which he would provide expert testimony is entirely unclear, particularly because he is an orthopedist and not a neurologist.  Dr. Giordano diagnosed post-concussive

syndrome, but did not explain the basis for that conclusion in the November 17, 2020 report. In fact, Dr. Giordano specifically noted in his report that "I advised this gentleman he needs to get in to see the neurologist. My preference would be for him to get in much sooner than December 28 to see what options he has and if further imaging studies are required." *Id.* Moreover, Dr. Giordano offered no opinion whatsoever that the accident caused a concussion or any other neurological issue.

In sum, Plaintiff asks the Court and counsel to infer, from various and disparate entries in the hundreds of pages of medical records he has produced, the information required by Rule 26(a)(2)(C). The Court appreciates Plaintiff's counsel's efforts to avert this issue by securing an appropriate Rule 26(a)(2)(C) disclosure. However, this default approach—*i.e.,* reliance on the existing medical records to indirectly satisfy Rule 26(a)(2)(C)—is inimical to the fair-notice purpose of the rule. Moreover, even a generous reading of those records does not reveal a specific or definitive disclosure that Dr. Gadallah or Dr. Giordano would testify at trial that the accident caused Plaintiff to suffer a concussion, stroke symptoms, or neurological injury, much less the facts on which the witness would rely to support that conclusion.[4] At best, those records

---

[4] Defendants also ask this Court to bar Plaintiff from introducing expert medical testimony under *Daubert* and Federal Rule of Evidence 702. The Court has significant reservations as to whether Dr. Gadallah or Dr. Giordano would pass muster under *Daubert* and Rule 702. Under Rule 702, a witness who has the requisite skill, training, education or experience may offer expert testimony if that testimony is (1) based on sufficient facts, (2) "is the product of reliable principles and methods," and (3) is the result of a reliable application of the principals and methods to the underlying facts. In *Daubert* and *Kumho Tire Co. Ltd. v. Carmichael*, the Supreme Court provided a flexible list of factors to assess the reliability of expert testimony. *Daubert*, 509 U.S. at 593-94; *Kumho Tire Co. Ltd.*, 526 U.S. 137, 141 (1999). At bottom, the expert testify must be based on reliable and supported facts and scientific principles, and not speculation. Op. & Order at 4 (quoting *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 1995)).

In this case, there is no evidence in the record that Plaintiff sustained a concussion, neurological injury, or recurrence of stroke symptoms, due to the accident. Moreover, neither Dr.

allow for the mere possibility that Plaintiff might have suffered post-concussion syndrome. *See, e.g.*, Dr. Giordano Report at 171. But as the Court noted, that degree of speculation is not an adequate substitute for a reliable etiology, and is inadmissible. Op. & Order, D.E. 49, at 5.

Plaintiff also argues that "[t]here is no etiology showing the cause of the Plaintiff's injuries was a stroke from this accident." Pl. Opp. Brf., D.E. 85, at 5. He contends, as lay argument, that the MRI of Plaintiff's brain and EEG results showed no significant findings indicative of a stroke, thereby suggesting that Plaintiff suffered a concussion from the accident. Plaintiff also contends that not even Dr. Head cited any medical evidence that Plaintiff's post-accident condition was because of the stroke in 2013. *Id.* But even if that is all true, it misses the point entirely. It remains Plaintiff's obligation to establish, through competent expert testimony and not his or counsel's lay speculation, that the accident caused the physical injuries of which he complains. And as Judge Chesler noted, "the mere absence of evidence concerning etiology does not open the door to rank speculation as to what else may or may not have been the cause of the post-accident symptoms . . . ." Op. & Order, D.E. 49, at 5.

---

Gadallah nor Dr. Giordano is a neurologist, and Plaintiff fails to explain their qualifications to offer any opinion whether the accident caused Plaintiff to suffer a concussion or stroke symptoms.

Despite the Court's concerns about whether any expert testimony by Dr. Gadallah or Dr. Giordano would pass muster under *Daubert* and Rule 702, the Court declines to reach this issue. As set forth above, there is no indication in the record that either medical professional has actually opined that the accident caused Plaintiff to suffer a concussion or stroke symptoms. Further, because Plaintiff has not complied with the disclosure requirements of Rule 26(a)(2)(C), he has not identified the subject matter of each witness's expert testimony, their opinions, or the facts on which the witnesses would base those opinions. The absence of those disclosures precludes the Court from analyzing the reliability of any such opinion.

**III.    CONCLUSION & ORDER**

For the foregoing reasons,

IT IS on this 6th day of January 2026,

**ORDERED** that Defendants' motion to preclude Plaintiff from offering at trial expert medical testimony that the November 11, 2020 accident caused him to suffer a concussion or recurrence of symptoms from a stroke that Plaintiff suffered in 2013, or other neurological injury [D.E. 82] is **GRANTED,** except that Plaintiff may testify that following the accident, he experienced pain in his neck and back.

*s/Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**